**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **(Rural Development)** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2010-0125** |
| | ) | |
| **BERNARD J. HAMILTON,** | ) | |
| **SMYRNA B. HAMILTON,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**Attorneys:**
**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
  *For Plaintiff*

**William W. Franks, Esq.,**
St. Croix, U.S.V.I.
  *For Defendants*

**<u>MEMORANDUM OPINION</u>**

**Lewis, Chief Judge**

  THIS MATTER comes before the Court on the "Motion for Summary Judgment" (the "Motion") filed by Plaintiff United States of America (Rural Development) ("Plaintiff" or the "Government") on April 30, 2012 (Dkt. No. 32) and its "Supplement to Plaintiff's Motion for Summary Judgment," filed on July 5, 2013 (the "Supplement"). (Dkt. No. 62). By way of the Motion and Supplement, Plaintiff seeks a judgment of foreclosure against Defendants Bernard J. Hamilton and Smyrna B. Hamilton (collectively, the "Hamiltons"). For the reasons discussed below, the Court will grant Plaintiff's Motion.

## BACKGROUND

On December 30, 2010, Plaintiff filed a Complaint for debt and foreclosure against the Hamiltons, Banco Popular de Puerto Rico, and the Government of the Virgin Islands. (Compl., Dkt. No. 1).[1] Plaintiff alleged that the Hamiltons defaulted on a Promissory Note, a Mortgage, a Subsidy Repayment Agreement, and a Reamortization and/or Deferral Agreement regarding certain property ("the Property") described as:

> Plot No. 10-G of Estate Work & Rest, Queens Quarters, consisting of .2330 U.S. Acres, or as more fully shown on P.W.D. #4030 dated 9/8/80 revised 5/5/88.

*Id.* ¶ 8. The Complaint alleged that, on January 16, 1989, the Hamiltons executed and delivered to the Government, acting through Rural Development ("RD"), an agency of the U.S. Department of Agriculture, a promissory note (the "Note"), obligating them to pay the Government the principal amount of $64,500.00, together with interest at the rate of 9.75% per annum. *Id.* ¶ 7. To secure payment on the Note, on the same date, the Hamiltons executed and delivered to the Government a real estate mortgage (the "Mortgage"), which provided that they would pay Plaintiff the indebtedness due under the Note. *Id.* ¶ 8. Also on January 16, 1989, the Hamiltons entered into a Subsidy Repayment Agreement with the United States, which permitted Plaintiff to recapture interest credits granted to the Hamiltons upon foreclosure of the Mortgage. *Id.* ¶ 9. Then, on March 16, 2000, the Hamiltons and Plaintiff entered into a Reamortization and/or Deferral Agreement ("Reamortization Agreement"), which provided that monthly installments of $552.16 would be due beginning April 16, 2000. *Id.* ¶ 10.

The Complaint further alleged that the Hamiltons were in default under the terms and conditions of the Note, Mortgage, and Reamortization Agreement, as a result of their failure to

---

[1] Defendants Banco Popular de Puerto Rico and the Government of the Virgin Islands were dismissed from this case in April 2011. (Dkt. Nos. 23, 24).

pay monthly installments due on November 16, 2007 and thereafter; that Plaintiff declared the entire amount of the indebtedness evidenced by the Note and Reamortization Agreement, and secured by the Mortgage, to be immediately due and payable, and demanded payment from the Hamiltons; and that, as of the date of the Complaint, the default had not been cured. *Id.* ¶¶ 10-13. The Complaint provided that the Hamiltons owed the Government $65,690.59 in principal and advances, $18,078.55 in interest through November 23, 2010, and $21,295.39 in recaptured interest credits, for a total of $105,295.39. That sum would continue to accrue interest at $15.9423 per diem until the date of judgment. *Id.* ¶ 14. The Hamiltons filed an Answer on March 18, 2011. (Dkt. No. 18).

Plaintiff subsequently filed its Motion for Summary Judgment against the Hamiltons, claiming that it was undisputed that the Hamiltons failed to make payments under the terms of the Note, Mortgage, and Reamortization Agreement and were in default. (Dkt. No. 32 at 4). The Government provided an affidavit of Nigel D. Parish, Area Director for Rural Development in the Virgin Islands, which itemized how the interest and costs were calculated. (Dkt. No. 33-7). In his Affidavit, Mr. Parish asserted that Plaintiff determined that a subsidy recapture of $2,977.30 was owed on the Mortgage, representing payment assistance granted to the Hamiltons from the date the loan commenced until the date the Mortgage was accelerated. *Id.* ¶ 6. Mr. Parish also stated that, as of April 30, 2012, the principal balance owed on the Hamiltons' Mortgage was $57,670.28, which took into account the official date of default of November 16, 2007 (with the Hamiltons' last payment on the loan on October 16, 2007), as indicated on an attached Certificate of Indebtedness ("COI") dated April 30, 2012. *Id.* ¶ 7 & Dkt. No. 33-8. He calculated the interest through April 30, 2012 as $25,541.66. *Id.* Other costs due and owing included: $2,758.27 in taxes; $6,577.28 in forced place insurance; $125.00 for a title search; and $671.88

for an upcoming insurance premium, totaling $10,132.43. These costs accrued interest at a $2.5274 per diem rate. *Id.* ¶ 8. Mr. Parrish attached a Payoff Information Sheet to his Affidavit which listed these charges (as well as late charges and interest on fees currently assessed). (Dkt. No. 33-8).

The Hamiltons opposed the Motion. (Dkt. No. 36). They asserted that: (1) the Reamortization Agreement did not contain the signature of Defendant Smyrna Hamilton, and she therefore was not bound thereunder; (2) a Certificate of Indebtedness signed by Nigel Parish on October 28, 2011 indicated a January 18, 2008 default date, which differed from the November 16, 2007 date contained in the April 30, 2012 Certificate of Indebtedness filed by Plaintiff in support of its Motion; (3) the figures on a November 1, 2011 Payoff Information Sheet (Dkt. No. 37) differed from the figures on the Payoff Information Sheet provided by Mr. Parish (Dkt. No. 33-8); and (4) the calculations of amounts due were not binding on Defendant Smyrna Hamilton because they were based on the Reamortization Agreement which she did not sign. (Dkt. No. 37).

On June 4, 2012, the Government filed a Reply, which highlighted the fact that, in their Response to Plaintiff's Motion, the Hamiltons did not dispute that they were in default under the terms of the Note, Mortgage, and Reamortization Agreements, but rather that there was a discrepancy between the October 28, 2011 and April 30, 2012 Certificates of Indebtedness concerning the date of default, among other inconsistencies. (Dkt. No. 40). The Government also amended its Statement of Undisputed Facts to include the assertion that a second Reamortization Agreement was signed by Bernard and Smyrna Hamilton in August 2007. (Dkt. No. 40 at 3; Dkt. No. 40-1). While acknowledging that Smyrna Hamilton could not be obligated on the March 2000 Reamortization Agreement, the Government contended that she was liable under the

August 2007 Reamortization Agreement, and that both Defendants had defaulted on the Note, Mortgage, and Reamortization Agreement that they had executed. (Dkt. No. 40 at 2).

The Government also submitted an Amended Affidavit of Mr. Parish, which addressed Defendants' contention that the default date contained in the April 30, 2012 Certificate of Indebtedness (November 17, 2007) was inconsistent with the default date contained in the Certificate of Indebtedness dated October 28, 2011 (January 18, 2008). Mr. Parish explained that the correct default date was November 17, 2007, while January 18, 2008 represented the date the loan was accelerated after Defendants failed to make payments for 90 days. He averred that the difference did not change the amounts the Hamiltons owed following their default. (Dkt. No. 40-3 at ¶¶ 3-4). Mr. Parish also asserted that the April 30, 2012 Certificate of Indebtedness contained an accurate recital of the indebtedness owed by Defendants to Plaintiff under the terms of the Note, Mortgage and Reamortization Agreements. *Id.*, ¶ 5.

On June 21, 2012, the Court granted the Government's Motion for Leave to File an Amended Complaint to add a paragraph alleging that the Hamiltons had executed a Reamortization Agreement on August 15, 2007 (Dkt. No. 49), and the Government filed its First Amended Complaint on June 21, 2012. (Dkt. No. 50). In their Answer to the First Amended Complaint, the Hamiltons admitted that they failed to make their monthly installment due November 16, 2007, but denied that they made no further payments to Plaintiff. They contended that, in April 2010, "the US Department of the Treasury Financial Management Service began reducing Defendants Social Security benefits in the amount of $240.45 monthly and applying said sum to the debt which is the subject matter of this complaint"—a practice which continued for the next nine months. (Dkt. No. 52 at 1, 2).

On July 18, 2012, the Court granted the parties' request to continue the trial and stay proceedings for six months in order to determine whether Defendants qualified for a short-cure reamortization of their Mortgage. (Dkt. No. 54). On January 31, 2013, the Government reported that Defendants "were unable to provide any funds to pay down towards the short-cure reamortization," and that Defendants had not "presented a complete short-cure reamortization package to Plaintiff," nor did they show any evidence "that they can afford to pay the terms of a re-amortized mortgage during the remaining term of the mortgage." (Dkt. No. 55 at 1). The Government represented that the parties agreed that the stay could be lifted and that the Court should rule on the outstanding Motion for Summary Judgment. *Id.* The Court lifted the stay on February 4, 2013 (Dkt. No. 56), and subsequently set a status conference for June 2013. (Dkt. No. 57).

At the status conference, Defendants' counsel informed the Court that the Social Security Administration had been taking money from Defendant Bernard Hamilton's Social Security Disability payments and applying those sums to the Mortgage. The Government's attorney stated that those sums were being applied through the Treasury Offset Program ("TOP"); that she had been unaware that this was occurring until she was informed by the Hamiltons' attorney; and that she would supplement the Government's Motion to credit the amounts paid by the Hamiltons via the TOP program in order to arrive at an accurate judgment figure. At the status conference, the Court granted leave to the Hamiltons to raise a new issue in an Amended Answer, and issued a Scheduling Order for additional briefing. (Dkt. No. 58).

In their Amended Answer filed on June 21, 2013, Defendants argued that whenever Rural Development makes a decision adverse to a participant, regulations require it to provide written notice of such decision and to inform the participant of their right to a USDA National Appeals

6

Division hearing; that Plaintiff's denial of Defendants' request for a short-cure reamortization in 2009 without providing notice of the right of appeal violated Defendants' procedural due process rights; and that Plaintiff should, therefore, be barred from proceeding further with this action. (Dkt. No. 61 at ¶¶ 11-12). Defendants provided a copy of a July 1, 2009 letter in which Rural Development informed them that it had reviewed their request for a short cure reamortization and that it could not take favorable action on their request because they hadn't provided accurate information or evidence of income available to repay the loan. (Dkt. No. 61-1).

In response, the Government filed its Supplement, to which it attached a Second Amended Statement of Facts (Dkt. No. 63); an "Affidavit of Marilyn Cardoza on the Certification of Government Records and Debt Owed by Borrowers" (Dkt. No. 63-1); and an Amended Memorandum of Law. (Dkt. No. 64). The Cardoza Affidavit described the sums Rural Development received from Defendants from the TOPS program, how the sums were credited, the amount of debt presently owed, and how the fees were calculated—supported by a Pay-Off Information sheet detailing the outstanding mortgage debt as of July 5, 2013. (Dkt. No. 63-1). The Memorandum of Law addressed, *inter alia*, the two issues raised by Defendants in their Amended Answer: (1) whether the administrative offsets taken from the Social Security Disability benefits of Defendant Bernard Hamilton precluded Plaintiff from foreclosing; and (2) whether Defendants were denied due process in 2009 when they did not receive notice that they could appeal an adverse decision by the agency that denied their application for a short-cure reamortization. (Dkt. No. 64).

In her Affidavit, Ms. Cardoza—a Rural Development employee for the past twenty years who had personal knowledge of the documents executed by the Hamiltons—stated that the Hamiltons defaulted on their Mortgage on November 16, 2007, after which the loan was

accelerated. She asserted that, on January 18, 2008, Rural Development sent the Hamiltons notice of acceleration and demand for full payment of the debt. (Dkt. No. 63-1). Ms. Cardoza added that Rural Development's January 18, 2008 letter informed the Hamiltons that foreclosure proceedings would begin within 30 days if they failed to appeal the decision to the National Appeals Decision Area Supervisor. *Id.* ¶ 5. Since the Hamiltons did not appeal the acceleration decision, Ms. Cardoza asserted that they forfeited the opportunity to participate in other program benefits and loan servicing options unless they cured their default or the loan was reinstated by short-cure reamortization. *Id.* ¶ 6.

Ms. Cardoza went on to say that, in 2009, the Hamiltons submitted an application for a short-cure reamortization, but Rural Development denied the application because the Hamiltons failed to provide complete information regarding their income. *Id.* ¶ 7. Rural Development returned the funds the Hamiltons had submitted as part of the short-cure application to partially cure their mortgage arrears. *Id.* Ms. Cardoza added that an

> application for a short-cure reamortization is considered an offer to pay once the borrower has defaulted. An offer to pay does not reinstate the mortgage. Therefore, a decision by RD [Rural Development] not to approve the short cure application due to incomplete information did not entitle the Hamiltons to notice, pursuant to 7 C.F.R. § 3550.4 that they had a right to appeal the agency's decision.

*Id.* ¶ 8.[2]

---

[2] The regulation, entitled "[r]eviews and appeals," provides:

> Whenever RHS [Rural Housing Service] makes a decision that is adverse to a participant, RHS will provide the participant with written notice of such adverse decision and the participant's rights to a USDA [U.S. Department of Agriculture] National Appeals Division hearing in accordance with 7 CFR part 11. Any adverse decision, whether appealable or non-appealable may be reviewed by the next-level RHS supervisor.

7 C.F.R. § 3550.4.

Ms. Cardoza further explained that, pursuant to applicable regulations promulgated by the Department of Agriculture under the Treasury Offset Program, Rural Development certified to the Department of Treasury "that the Hamiltons' delinquent mortgage was eligible to receive administrative offsets from any federal funds payable by the United States to the Hamiltons." *Id.* ¶ 9. Ms. Cardoza summarized the offsets taken from Mr. Hamilton's Social Security Disability benefits and credited to the outstanding mortgage debt as follows: from March 18, 2010 through September 16, 2010, Rural Development received administrative offsets of $224.45 per month; from October 21, 2010 through July 21, 2011, Rural Development credited $223.45 per month to the Hamiltons' mortgage account; Rural Development did not receive any TOP payments from the Hamiltons between August 2011 and October 2012; on November 23 and December 20, 2012, Rural Development received $230.23 per month; and from January 17, 2013 through June 17, 2013, Rural Development received $234.97 per month. *Id.* ¶¶ 9-15.

The Payoff Information Sheet accompanying the Cardoza Affidavit showed an outstanding debt of $105,305.63 on the Mortgage through July 5, 2013, comprised of: principal balance of $55,936.00; uncollected accrued interest from date of default (November 16, 2007) through July 5, 2013 of $31,213.49, at a rate of 9.75% interest (per diem of $14.9418); subsidy recapture of $2,977.30; real property taxes, forced place insurance and funds to replenish negative escrow of $12,482.43; interest on unpaid assessed fees of $2,571.41 at 9.75% interest (per diem of $3.3681), and a title search fee of $125.00. *Id.* ¶ 16 & Dkt. Nos. 63-1 at 6, 63-2.

In their Response to Plaintiff's Supplement, the Hamiltons reassert their argument that the denial of their short-cure reamortization application should have been accompanied by a notice stating that they could appeal, and because it wasn't, summary judgment should be denied

and the matter dismissed. (Dkt. No. 66 at 2-3). The Government filed a Reply. (Dkt. No. 68). The matter is now ripe for adjudication.

## DISCUSSION

### A.  Summary Judgment Standard

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc); *see also* Fed. R. Civ. P. 56(a). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In reviewing the evidence, the court may not weigh the evidence and must give the nonmoving party the benefit of all reasonable inferences. *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citations omitted); *Bray v. Marriott Hotels*, 110 F.3d 986, 989 (3d Cir. 1997).

To succeed on a foreclosure claim under Virgin Islands law, the plaintiff must show: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note. *Thompson v. Florida Wood Treaters, Inc.,* 2009 WL 4730784, at *3 (D.V.I. Dec. 6, 2009) (citing *National Union Fire Ins. Co. v. Saunders*, 899 F. Supp. 452, 455

(C.D. Cal. 1993)); *see also* Am. Jur. 2d Mortgages § 633 (2008) (foreclosure requires valid mortgage, default on part of mortgagor, and foreclosure in compliance with terms of contract).

### B.  Analysis

The Government has submitted the Note dated January 16, 1989 executed by Defendants Bernard Hamilton and Smyrna Hamilton, in which they promised to pay the Government the principal sum of $64,500.00 together with interest at a rate of 9.75% per year.  (Dkt. No. 50-1). The Government also submitted the Mortgage, executed on the same date by Bernard Hamilton and Smyrna Hamilton, to secure payment on the Note (Dkt. No. 50-2), and a Subsidy Repayment Agreement, dated January 16, 1989, executed by Bernard Hamilton and Smyrna Hamilton, in which they promised to repay a subsidy granted them in the form of interest credits. (Dkt. No. 50-3). Finally, the Government provided the March 31, 2000 Reamortization Agreement signed by Bernard Hamilton (Dkt. No. 50-4) and another such agreement dated August 15, 2007, signed by Bernard Hamilton and Smyrna Hamilton. (Dkt. Nos. 50-4 and 50-5, respectively).

Based on the foregoing, the Government has shown that Defendants executed the Note, Mortgage, and Subsidy Repayment Agreement, with Mr. Hamilton executing the March 31, 2000 Reamortization Agreement, and both Mr. and Mrs. Hamilton executing the August 15, 2007 Reamortization Agreement, Defendants have not argued to the contrary and have put forth no evidence suggesting otherwise. Accordingly, there is no genuine dispute of material fact as to whether Defendants executed the Note and Mortgage at issue, and Plaintiff has satisfied the first requirement of what is necessary to succeed on a foreclosure claim in the Virgin Islands. *See Ridgewood Bd. of Educ.*, 172 F.3d at 252.

Plaintiff has also provided evidence that Defendants are in default on the Note and Mortgage by failing to make payments due under those documents (and subsequent

Reamortization Agreements), and that it may foreclose on the Property. The Note indicates that "[f]ailure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default . . . hereunder" and that upon any such default, "the Government at its option may declare all or any part of any such indebtedness immediately due and payable." (Dkt. No. 50-1 at 2). The Mortgage provides that "[u]pon default by Borrower. . . , the Government may foreclose this instrument," including through foreclosure by sale of the property at public auction. (Dkt. No. 33-2, ¶ 23). Plaintiff submitted a Certificate of Indebtedness dated April 30, 2012 which notes that the Hamiltons were in default as of November 16, 2007. (Dkt. No. 33-8). Defendants have not challenged Plaintiff's contention that they were in default or Plaintiff's authority to foreclose on the Property mortgaged as security for the Note, nor have Defendants presented any evidence contrary to Plaintiff's claims in these respects. Accordingly, the Court finds that there is no genuine issue of material fact as to whether Defendants were in default under the terms and conditions of the Note and Mortgage, or whether Plaintiff possessed the authority to foreclose on the Property due to Defendants' default.

In their Response to Plaintiffs' Supplement, Defendants raise a procedural due process argument, contending that their 2009 application for a short-cure reamortization constituted a special servicing action, pursuant to 7 C.F.R. § 3550.201;[3] that the denial of their application

---

[3] This regulation, entitled "[p]urpose of special servicing actions," provides:

> The Rural Housing Service (RHS) may approve special servicing actions to reduce the number of borrower failures that result in liquidation. Borrowers who have difficulty keeping their accounts current may be eligible for one or more available servicing options including: payment assistance; delinquency workout agreements that temporarily modify payment terms; protective advances of funds for taxes, insurance, and other approved costs; payment moratoriums; and reamortization of the loan.

7 C.F.R. § 3550.201.

should have been accompanied by a notice stating that they could appeal, pursuant to 7 C.F.R. § 3550.4; and that because Rural Development failed to comply with that notice requirement after they received an adverse decision, summary judgment should be denied. (Dkt. No. 66 at 2-3).

Defendants' raise their due process claim, but fail to analyze it in accordance with its legal elements. A constitutional procedural due process claim "is subject to a two-stage inquiry: (1) whether [Defendants have] a property interest protected by procedural due process, and (2) what procedures constitute due process of law." *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (quotation marks omitted). If Defendants are contending that they had a constitutionally-protected property interest in receiving a short-cure reamortization, such that failure to notify them of the ability to appeal the denial of their application rose to the level of a constitutional procedural due process violation, this argument has no merit. Defendants have provided no authority to support such a contention, and the regulations cited by both parties indicate otherwise.

When the Hamiltons applied for a short-cure reamortization in 2009, their loan had already been accelerated by action taken by Rural Development in January 2008. Accordingly, the contention that the short-cure reamortization constituted a special servicing action per 7 C.F.R. § 3550.4 is incorrect because the provisions of 7 C.F.R. § 3550.211(h) had already come into play. The latter regulation, "[e]ligibility for special servicing actions," provides that "[a] borrower is not eligible for special servicing actions once the account has been accelerated." 7 C.F.R. § 3550.211(h). Without even being eligible for a short-cure reamortization, there is no basis for the conclusion that the Hamiltons had a constitutional property interest in such relief. *Schmidt v. Creedon,* 639 F.3d 587, 595 (3d Cir. 2011).

Moreover, even assuming that Defendants were eligible for a short-cure reamortization, such relief, as Plaintiff points out, is discretionary pursuant to the terms of 7 C.F.R. § 3550.201 (providing that the Rural Housing Service "may" approve special servicing actions, and that borrowers "may" be eligible for servicing options). Such discretionary relief would not qualify for due process protection. *See Suryanto v. Att'y Gen. of U.S.*, 398 F. App'x 830, 834 (3d Cir. 2010) ("When the decision to grant or withhold a benefit is entrusted to the discretion of a government actor, one has no constitutional property interest in obtaining that relief.") (citing *Conn. Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465 (1989)). Accordingly, even if the Hamiltons were eligible, they would not have a property interest in a short-cure reamortization protected by procedural due process.[4]

In view of the foregoing, the Hamiltons have not shown that a genuine issue of material fact exists and that a reasonable factfinder could rule in their favor. *Ridgewood Bd. of Educ.*, 172 F.3d at 252. An Order granting summary judgment is therefore appropriate.

---

[4] In their Amended Answer, the Hamiltons raised as an affirmative defense that the administrative offsets applied to their loan from the TOP program, as well as payments in 2009, which were returned, precluded Plaintiff from foreclosing on the Property. (Dkt. No. 60). Although the Hamiltons did not argue this point in their Opposition to Plaintiff's Supplemental Motion for Summary Judgment (Dkt. No. 66), Plaintiff addressed this matter in its Supplemental Motion for Summary Judgment. (Dkt. No. 64). The Court agrees with the Government that the TOP payments and the other partial payments, made after the Hamiltons had defaulted on their loan, did not cure their default or reinstate their Mortgage so as to defeat summary judgment. *See id.* at 7-8; *see also United States v. Asken,* 2002 WL 32175416, at *2 (E.D. Pa. Oct. 28, 2002) (stating "widely accepted" view that partial payment of a defaulted mortgage will not cure the default).

## **CONCLUSION**

For the reasons discussed above, the Court will grant Plaintiff's Motion for Summary Judgment. An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: October 17, 2013

                                      _____/s/_____
                                        WILMA A. LEWIS
                                        Chief Judge